### No. 1305.

### C. McD. PUCKETTE vs. A. W. O. HICKS, JUDGE.

Where the co-proprietor and editor of a newspaper has, under contract with his co-partner, the absolute right to have full editorial control and to dictate its policy and formulate its utterances upon any and all topics and subjects without hindrance or interference from his partner or any other source, the deprivation and denial of such right by the acts of his co-partner constitutes an injury for which pecuniary damages would be an inadequate compensation, and, therefore, in the sense of the law, irreparable.

If an injunction, restraining the party from violating and depriving the other of the exercise of such right, be dissolved on bond, such order of dissolution is an interlocutory decree which may cause an irreparable injury, and is, therefore, subject to a suspensive appeal.

APPLICATION for Mandamus.

*Alexander & Blanchard* and *Wise & Herndon* for the Relator.
*R. J. Looney* and *Bell & Randolph* for the Respondent.

---

The opinion of the Court was delivered by

FENNER, J. The application is for a mandamus to compel the respondent judge to grant a suspensive appeal from an order dissolving a preliminary injunction on bond.

Art. 566, C. P., provides: "One may likewise appeal from all interlocutory judgments, when such judgment may cause him an irreparable injury."

Art. 307, C. P., authorizes the courts, "in their discretion," to dissolve an injunction on bond, "whenever the act prohibited by the injunction is not such as may work an irreparable injury to the plaintiff."

It is held that the discretion thus vested in the courts is limited to

cases where the act prohibited may not work an irreparable injury; that, in the latter case, they have no right or power to dissolve on bond; and that an order dissolving on bond in such cases is itself an interlocutory judgment which may cause an irreparable injury, and is, therefore, appealable under C. P., 566. It is further held that where the judge refuses to grant an appeal from such an order the plaintiff may resort to this Court for a mandamus to compel him to do so.

On application for such mandamus the inquiry in this court is, simply, whether the act, which is prohibited by the injunction and is unfettered by the dissolution, is such as may cause to plaintiff an irreparable injury. If found to be such, the mandamus is granted; if not so found, it is denied.

In this inquiry, the allegations of the plaintiff's petition for injunction are to be taken as true, so far as the facts therein set forth are concerned.

By the foregoing it is not meant that we are to be concluded by mere allegations in the petition that the acts restrained will occasion irreparable injury. Such allegations are mere inferences and deductions from the acts and facts charged, the verity and soundness of which we may review.

We are to examine the facts charged and the nature and character of the injury which may be inflicted by the acts complained of, and are thus to determine whether such injury may be irreparable *vel non*.

It is difficult to lay down any precise rule as to what gives to an injury the quality of being irreparable; but the general principle is that an injury the damage from which is merely in the nature of pecuniary loss and can be exactly and fully repaired by compensation in money, is a reparable injury for which a bond of sufficient amount and properly secured may afford all adequate indemnity. But as we have heretofore said: " There are many injuries which, in the very nature of things, cannot be repaired by any money consideration, such, for instance, as result from acts which outrage the feeling and wound the sensibilities, or deprive us of objects of affection or of things, perhaps, trivial in themselves, but of inestimable value by reason, solely, of being associated with some precious memory or touching incident of our lives. Or it may be that the maintenance of the writ is required to preserve to us our homes, and to establish us in a state or condition which, lost for the moment, can never be recovered, nor the loss atoned for by money. In this class of cases, the injunction should be maintained because the injury from its dissolution would be irreparable." Crescent City vs. Police Jury, 32 Ann. 1194.

The foregoing was quoted not as an exhaustive, but as an illustrative, statement of the kind of injuries which are considered irreparable.

Thus it was held that an injunction restraining the destruction of forest trees upon land claimed by the plaintiff to belong to him involved an irreparable injury and could not be dissolved on bond. Delacroix vs Villeré, 11 Ann. 39.

So it was held that an injunction to restrain the sale of plantation, which sale would involve its transfer and loss to the claimant, cannot be dissolved on bond, because while the bond might indemnify for the value of the plantation, it could not restore the plantation itself. White vs. Cazenave, 14 Ann. 57.

So an injunction against acts operating a change of possession of immovable property involves an irreparable injury, because the possession thus obliterated cannot be restored for the time during which it was lost. Marion vs. Johnson, 22 Ann. 512; Boedicker vs. East, 24 Ann. 154; Sigur vs. Judge, etc., 33 Ann. 133.

Injunction to restrain emptying of nuisance-boat in a river, polluting plaintiff's water supply and constituting a nuisance, was held not dissoluble on bond. Water Works Co. vs. Oser, 36 Ann. 918.

Where members of a Masonic fraternity enjoined their fellow members from excluding them from the enjoyment of the common property and depriving them of the intellectual and moral enjoyment of participating in Masonic meetings and rites, the Court said: "It would be difficult to estimate in dollars and cents the damage the plaintiffs may sustain by being deprived of their supposed privileges as members of the corporation. A compensation even in damages could not, therefore, be readily awarded plaintiffs. If the plaintiffs have any right at all, they are entitled to maintain their injunction until they can be heard contradictorily with their opponents." And the order dissolving on bond was reversed. Knabe vs. Fernot, 14 Am. 847.

Such are a few illustrations of the principles guiding this Court in these matters. Each particular case, however, is to be considered on its own facts and circumstances and the relief determined thereby.

Let us now, therefore, examine the case in hand.

Plaintiff alleges, in substance, that the establishment constituting the "Shreveport Times" newspaper was leased jointly for the period of *three* years, by himself and his co-lessee, Johnson, to be conducted by them as a newspaper; and that it was, at the time, agreed between them that plaintiff "was to be the editor of the paper and was to have full editorial control of the newspaper, its policy and utterances upon any and all topics and subjects without hindrance or interference from any source; and his co-lessee was to have charge of the mechanical department of said paper in the capacity of superintendent of the typesetting and printing department of the paper;" that, accordingly,

during the first year of the enterprise plaintiff had enjoyed sole control as editor; but that, within a few days prior to the suit, Johnson had assumed to interfere with the editorial control, and had given instructions to insert no article of a political nature prepared and offered by Puckette, and had actually thrown out and refused to print such articles and had given a continuing order to the employees in the printing department not to insert such.

The foregoing are pure allegations of fact, which, for the purposes of this proceeding, must be taken as true.

He alleges that this conduct of his co-lessee is a usurpation and invasion of his rights; that it operates a change in the possession and control of the newspaper and deprives him of his just control over its policy and editorial utterances; that it deprives him of the intellectual enjoyment of editing the paper and prevents him from carrying out the policy he had adopted as regards said paper; that he cannot be maintained in his rights as editor without the aid of the court; and that the action of the defendant was calculated to injure and would injure his reputation and standing as a newspaper man and bring him into contempt and disrepute in his vocation.

Upon such allegations the injunction was originally granted, and upon a rule to dissolve it as improvidently and illegally issued on the face of the papers, the judge, after full hearing and with an elaborate opinion, maintained it.

It is impossible and would be eminently improper for us to follow the learned respondent judge in his discussion of the legality and propriety of the injunction itself, unless, on the face of the papers, it was perfectly manifest that the granting of the injunction was an abuse of the powers of the court. This is not the case. The contract set out cannot be treated as one merely for personal services, nor is there any dubiety about the terms or construction of the contract, which must be absolutely accepted as stated in the petition. Therefore, the case of Healy vs. Allen, 38 Ann. 867, does not apply.

It is a suit for the specific performance of a contract and to restrain the violation thereof by one party, and we have very considerately held that, "in proper cases" (there indicated), "the courts of this State may and should enforce specific performance of contracts, by both mandatory and injunctive relief," quoting articles 1926 and 1927, C. C., the latter of which declares: "In ordinary cases, the breach of such a contract (to do or not to do) entitles the party aggrieved only to damages, but where this would be an inadequate compensation, and the party has the power of performing his contract, he may be constrained to specific performance by means prescribed in the laws

which regulate the practice of the courts." Levine vs. Mitchell, 35 Ann. 1126.

The case was quite similar to this one, being for an injunction to restrain violation of a partnership contract.

The question is whether, where the editor of a newspaper has by contract the absolute right to have full editorial control and to dictate its policy and formulate its utterances upon any and all topics and subjects without hindrance or interference from his co-partner or any other source, the deprivation and denial of such right constitutes an injury for which damages would be an inadequate compensation, and, therefore, in the sense of the law, irreparable.

If we could treat a public newspaper as a purely mercantile enterprise and the vocation of an editor as merely mercenary, perhaps we might maintain the contention of respondent and treat the injury to relator as a simple question of profit and loss, to be adjusted by pecuniary compensation. But surely newspapers have some objects and purposes higher than mere money making. As operated in modern times, they are something more than mere advertising mediums or even purveyors of news. They are organs of public opinion, instructors of the people, advocates of certain fixed policies and principles, the promotion of which must gratify the intellectual and moral desires of their proprietors, even if they do not, in all cases, advance their pecuniary interests. We might well conceive that, though offered the amplest pecuniary inducements to advocate principles or causes which they disbelieved, or to abstain from advocating those which they approved, worthy journalists would reject such propositions with the scorn which they would deserve. We must apply the same rule to the editor of a newspaper. He, too, must be treated as a man who has principles and convictions, a sense of public duty, a devotion to the interests of the people as he understands them; and we must assume that, in executing the functions of his high calling, he sets a value upon the advancement of such objects far above and beyond any mere pecuniary reward. When, in violation of his clear legal rights, his mouth is muzzled and he is deprived of his power to advocate his principles and convictions in the exercise of his vocation, we are bound to hold that he suffers an injury not susceptible of being measured by a mere money standard, and, therefore, in the sense of the law, irreparable.

The relator is, therefore, undoubtedly entitled to the suspensive appeal for which he seasonably applied.

It is, therefore, ordered and decreed that the provisional writ of mandamus herein issued be hereby made peremptory.

Poché, J., absent.