State ex rel. Dowdell vs. Judge et als.

No. 13,704.

STATE EX REL. JOHN T. DOWDELL VS. A. C. ALLEN, JUDGE.

SYLLABUS.

1. It is from the averments of litigants that the judge must decide whether or not the writ of judicial sequestration should issue.

2. To wait until the right of title is made clear, and that of possession made certain, would be to render useless and vain that provision of the law authorizing resort to the writ.

3. It is held herein that a previous writ of injunction obtained by one of the litigants was not set aside by the judicial sequestration which was issued to meet the requirements of a later phase of the controversy; it was merely suspended as to one of the objects which he who had obtained it had in view, viz: under shelter of the writ cutting the timber from the land in controversy.

4. But if this were a coming in conflict with the injunction, it was a proceeding alike sanctioned by the law and commanded by considerations of justice.

5. If a court, on a proper showing made, may order the judicial sequestration of property, it does not become shorn of this power by reason of the fact that it had antecedently on an *ex parte* showing, made some order in reference to the same property.

APPLICATION for Writs of *Certiorari* and Prohibition.

*D. Caffery & Son* for Relator.

*Mentz & Borah* for Respondents.

The opinion of the court was delivered by

BLANCHARD, J. Previously, relator had presented a petition to the district judge in which he represented he was engaged in the business of getting out ties; that these ties were made from cypress timber; that he held a contract from the owners of a certain tract of land, which he described, authorizing him to take the timber therefrom; and that he had entered upon the land for the purpose.

He alleged further that the representatives of the Orphans' Home Society and of the Freedman's Aid and Southern Educational Society were interfering with his work of taking timber from the land and that if this interference were persisted in it would completely break up his business and cause him irreparable injury.

Verifying by oath the allegations of his petition he asked for a writ of injunction to prevent further disturbance.

On the *ex parte* showing thus made, the judge (respondent herein) granted the injunction.

To this petition, the Orphans' Home Society and the Freedman's A. & S. E. Society, made defendants, answered, setting up in themselves, as owners in indivision, title to the land whereon relator had entered and from which he was cutting timber.

They averred they had acquired this title in 1867 and had been in possession of the land as owners ever since, under recorded deeds; and adding to the period of their own possession that of their vendors, they had possessed as owners for over fifty years, and this possession had been open, public and notorious.

They denied that any one had given the plaintiff, Dowdell (relator herein) authority to cut timber from the land, and that if any persons had undertaken to do so, their act was null, since they were not the owners.

They further asserted that the plaintiff (relator) well knew the land in question was their property, for prior to going upon the same to cut ties he had applied to them for permission to take the timber therefrom and had been refused. They declared his attempt to gain possession through the writ of injunction was a subterfuge, using the machinery of the court to effectuate a purpose he had failed to accomplish by private agreement, and that his intention was to maintain the injunction only so long as he could get the timber off the land, which timber constituted almost its sole value.

The filing of this answer to relator's injunction suit was followed by the institution before the same court of an action by the Orphans' Home Society and the Freedman's A. & S. E. Society against Dowdell in which their title to the land was set up substantially as given in their answer to his suit.

They referred to the adverse claim set up by Dowdell and to the injunction he had sued out, and represented that he and others in collusion with him were engaged in a scheme to hold possession of the land until they could denude it of its timber.

They represented anew Dowdell's previous acknowledgment of their ownership by seeking to contract with them for permission to cut the timber, etc.

They averred their property was in danger of being despoiled to their

irreparable injury, since Dowdell and his associates were irresponsible, and that unless the court intervened the devastation and spoliation would be accomplished before the injunction suit filed by Dowdell could be tried, and there would be left to the petitioners only "a ruined, dilapidated and plundered swamp"—Dowdell and his associates having reaped the harvest of timber and gone off with the only thing of value in the contest.

The prayer of this petition was for "such conservatory orders as the court may deem proper for the preservation of the property pending the litigation," and for judgment decreeing their ownership, etc.

Oath was made to the truth of the averments contained in the petition.

On this showing and in view of the whole situation as presented to him by this double-barreled litigation, the judge of the District Court thought the interest of justice required the court's further intervention, and, accordingly, he made an order in the last suit filed directing the judicial sequestration of the land and its timber, both standing and cut, the same to be held in the custody of the sheriff until the respective rights of the parties could be adjudicated.

After vainly endeavoring to secure an order of revocation of the judicial sequestration, Dowdell applied to this court, in the proceeding now before us, for its writ of prohibition and *certiorari,* to prevent the respondent judge from proceeding further in the matter of the judicial sequestration, and to obtain the annullment of the same as being in violation of the writ of injunction which the relator had previously obtained.

The contention is that the judge, by directing the judicial sequestration, has practically disregarded and set at naught the injunction; that the latter can not be collaterally and incidentally nullified by the issuance of a counter writ from the same court; and that until regularly dissolved, the injunction must be recognized, upheld and enforced as a valid and effective writ, subject to attack, modification or dissolution only in the proceeding in which it was issued.

The judge justifies his action by the statement that the litigation pending in his court showed an earnest contest over the ownership of real property, with the apparent right of possession in one litigant being no greater than in the other. Further, that his court was about to adjourn (at the time the judicial sequestration was issued) for the summer vacation, and it was made to appear by the sworn statements

of the Orphans' Home Society and its alleged co-owner that, pending the vacation and pending the trial of the suits filed, the swamp land in controversy would be ruined by the action of the relator and further litigation over the same rendered fruitless.

He declares the case was one which, under C. P. 274, called for the action he took, viz:—taking the possession of the thing in dispute from the disputants and putting the same in the custody of the sheriff until the question of title and right of possession could be finally adjudged; that from the averments of litigants must the judge decide whether or not the writ of judicial sequestration should issue; that to wait until the right of title was made clear, and that of possession made certain, would be to render useless and vain that provision of the law authorizing the resort to judicial sequestration, which is a conservatory writ to be exercised in the sound discretion of the court to protect real property pending the settlement of the question of its ownership.

He denies that the sequestration as ordered nullifies the previous injunction, but merely suspends the operations of the relator in the matter of taking the timber from the land in dispute and maintains the *status quo* until the rights of the claimants can be determined.

*Ruling*—The two suits, that of Dowdell against Orphans' Home Society, *et als.,* and that of the latter against Dowdell, are pending in the same court. It is one and the same controversy. The cases might well be, and should be, consolidated and tried together.

All that is set up in the separate action brought by the Orphans' Home Society and its co-owner, and all that is prayed for therein, might well have been set up and prayed for in their answer filed to the injunction suit brought by Dowdell.

And had they made the whole issue in their answer to that suit, the judicial sequestration, if issuable under the circumstances, could just as well have issued in that cause, following their answer, as it did in the separate suit to which they resorted.

So, it is not the case of one writ in one pending cause issuing to come in conflict with another writ in another pending cause.

Neither is it regarded as presenting, objectionably, the case of the issuance of conflicting writs in the same cause. Dowdell, on an *ex parte* showing, obtained an injunction which dispossessed the Orphans' Home Society and its co-proprietor of real property they claimed to own, and which went even further, for it practically authorized

Dowdell to denude the land of its timber. At least, that was to be and would have been the effect of the injunction.

And he had adroitly so drawn his petition as to make the injury to him, against which he invoked the injunction, appear *irreparable*—this to preclude dissolution of the injunction on bond.

But when the other side of the controversy came to be presented, first in the answer to the Dowdell suit and next in the petition in the separate suit brought by those against whom the injunction was directed, it appeared that an earnest contest was on involving the ownership and right of possession of real property and as the situation then presented itself, unless the court ordered its judicial sequestration, one of the claimants would devastate the property to the irreparable injury of the other claimants.

It is difficult to conceive a case more clearly authorizing a judge to make use of the power vested in him by Articles 273 and 274 of the Code of Practice, and taking the temporary possession' of the property from both claimants hold it in the custody of his court until he could pass upon the merits of the rival contentions.

By doing this, the writ of injunction which Dowdell had obtained was not set aside; it was merely suspended as to one of the objects which he who obtained it had in view, viz:—under shelter of the writ cutting the timber from the land.

But if this were a coming in conflict with the injunction then it was a legal conflict in the sense that it was a proceeding alike sanctioned by the law and commanded by considerations of justice—to hold and maintain the *status* until the court could pass upon the rights of property.

If a court, on a proper showing made, may order the judicial sequestration of property, we do not understand that it is shorn of this power by reason of the fact that it had antecedently, on an *ex parte* showing, made some order in reference to the same property.

In such a case as here presented the judge sits as chancellor vested with discretion to grant the equitable order, taking possession from both litigants and holding the property in the custody of his court to prevent its waste and dilapidation, whether these would result from acts extra-judicial, or from those which it is sought to protect and sanction by *ex parte* judicial orders.

It is ordered that the rule *nisi* which issued herein be discharged and that the writs applied for be denied at the cost of relators.