(38 South. 16.)

No. 15,253.

DOWDELL v. ORPHANS' HOME SOC. et al.

ORPHANS' HOME SOC. et al. v. DOWDELL (HARDING and SPILLER, Interveners).

(Jan. 30, 1905.)

PETITORY ACTION — INJUNCTION — BURDEN OF PROOF—PRESCRIPTION—POSSESSION —EVIDENCE.

1. The action is petitory. Plaintiff in injunction has the onus of proof. The defendants waived no right by subsequent action brought by them for the land. They (defendants) were not barred from pleading prescription.

2. The right of possession, shown to have been in the ancestor in title, passed to the purchaser. Without that possession by the purchaser, the title of this buyer is sustained by the long-term prescription.

At different times the owner under title, translative of property, exercised the right of a possessor under title.

3. The property in controversy was in the rear of and adjacent to the land of the Orphans' Home Society. The actual possessor who proves that he anciently had possession is presumed to have possessed during the intermediate time, unless there is proof to the contrary. Civ. Code, art. 3492.

Per contra, the defendants in the petitory suit could acquire no legal title under a description general in terms, referring to no particular land.

Besides, subsequent adverse title is sustained by prescription.

Cutting down a few trees in the swamps, without its appearing definitely whether the intention was to enter into possession, is not sufficient to maintain a title by prescription.

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Actions by John T. Dowdell against the Orphans' Home Society and the Freedman's Aid & Southern Education Society, by the Orphans' Home Society and Freedman's Aid & Southern Education Society against John T. Dowdell, Fannie E. Harding, intervener, and by the Orphans' Home Society and Freedman's Aid & Southern Education Society against John T. Dowdell, E. B. Spiller, intervener. The actions were consolidated, and from the judgment the succession of Dowdell appeals. Affirmed.

D. Caffery & Son, for appellant succession of Dowdell. Philip H. Mentz and Charles Frank Borah, for appellees Orphans' Home Soc. and Freedman's Aid & Southern Education Soc.

BREAUX, C. J. The first suit was brought for an injunction by John T. Dowdell, to prevent the "Orphans' Home" and the "Freedman's Aid Society" from interfering with him whilst at work in swamp lands making railroad ties, which he averred were owned by his

lessors, under whom he claimed, at the inception of the suit. Hereafter, for the sake of some brevity, we will refer to the defendants in injunction suit No. 10,581 as the "Orphans' Home."

Plaintiff averred that the property in question consisted of a concession by the government to John D. St. Marc Darby, and that it contained about 714 acres, lying in part in the rear of the property which had belonged to the Harding heirs, and lying in part in the rear of land belonging to the orphans' home. The latter (the orphans' home) controverted the right of plaintiff in injunction on the ground, mainly, that they (the corporations) are the owners of the land situated in the rear of their place on the Teche, having bought it in 1867 from the succession of Ransom H. Byrne. They claim to have possessed this land as owners under the title just mentioned from Byrne for 33 years, and, adding their possession to that of their vendors, they traced back their possession for over 50 years; an open, actual and uninterrupted possession, which they invoked in support of their plea of 30 years' prescription.

The orphans' home people evidently did not think that they had sufficient grounds in a mere answer in the injunction proceedings to enable them to set up title (in this injunction proceeding, No. 10,581), and for that reason, as we infer, two months after their answer had been filed in these proceedings, they brought an independent suit, in which they specifically alleged their rights as owners and expressed apprehension lest plaintiff in injunction would avail himself of his possession under the injunction to denude their land of its timber. The petitory action was intended by defendants in the injunction to amplify their defense in these injunction proceedings.

They charged that plaintiff (Dowdell) was colluding with his asserted lessors; that neither he nor they had any title to the lands, a part of which he pretended to have acquired since the petition for an injunction had been filed. The very earnest application of the orphans' home people for protection against plaintiff's asserted trespass moved the court to issue a judicial sequestration in the petitory action, to which we will again refer in a moment.

Plaintiff (Dowdell) in the injunction proceedings, defendant in the petitory action, by way of motion to set aside the action of the district court, alleged that the judicial sequestration—which was issued at the orphans' home's instance in the second suit—placing the property in the hands of the sheriff was in conflict with the writ of injunction which he had obtained; that, if the "two corporations" plaintiffs in this petitory action had any right at all, it should be pleaded in the writ of injunction proceedings (i. e., suit 10,524), which had not as yet been consolidated, and therein they should obtain an order dissolving and setting aside the injunction. The court did not agree with that view, and declined to grant the motion, and thereupon plaintiff (Dowdell) in the injunction proceeding sued for and obtained writs nisi of certiorari and prohibition to have the judicial sequestration rescinded and set aside.

On the merits of this application this court upheld the ruling of the district court, and declined to accept as correct the views urged by said plaintiff in injunction, and made the writs of certiorari and prohibition absolute. State ex rel. Dowdell v. Judge, 105 La. 167, 29 South. 719.

After the questions which came up on the foregoing application had been decided by the Supreme Court, Miss Fannie Harding, one of the Harding heirs, intervened and claimed as owner part of the property, joined plaintiff in injunction as joint owner, and averred that the action was not petitory, but an action of boundary—a plea in which plaintiff in injunction joined. About this time the two suits Nos. 10,529 and 10,581 were consolidated.

The foregoing statement relating to the pleadings brings us to a consideration of the facts.

Plaintiff in injunction, Dowdell, defendant in the petitory action, claims the benefit of a ruling by Dickinson, Surveyor General, dated in 1896, in which he sets forth that section 59, T. 14 S., R. 9 E., covering the land in contest as well as other lands, was recognized by the government as a back pre-emption of J. B. St. Marc Darby.

He also claimed that his ancestors in title held by act of sale dated December, 1806, from Widow J. B. St. Marc Darby, as follows:

"A tract of land on Bayou Teche of thirty arpents on each side of said bayou, and with a depth of sixty arpents on the west, and on the east of so much *as is shown upon an illustrated map.*" (Italics ours.)

(This illustrated map, referred to in quotation, could nowhere be found.)

This act was recorded in the office of the parish judge of St. Martin on April 10, 1829.

Said plaintiff then traced his title to another act of sale before Paul Briant, parish judge of St. Martin, on June 22, 1833, from the heirs of the Widow St. Marc Darby, of a tract of about 400 arpents, superficial measure, situated in the parish of St. Mary, beginning at the end of the depth of the land which belonged to the said Widow St. Marc Darby on the right of the Bayou Teche, in possession of W. S. Harding and Alexander Frere. This act was in the nature of a quitclaim deed in favor of W. S. Harding, who was the ancestor of those under whom plaintiff Dowdell, in injunction, and the other parties with him to these proceedings, claim to hold. This is the written evidence claimed by them as constituting their written legal title.

This brings us to a consideration of the written testimony on which defendants in injunction (first suit), plaintiffs in the petitory action (second suit), ground their hope of success in this litigation. We have already referred to the act of sale of 1867 of Byrne to the Orphans' Home Society. It is therefore only necessary to insert the description of the property, as set forth in the deed:

"That certain tract of land, or sugar plantation, lying and being situated in the parish of St. Mary, having a front of fourteen arpents on the east side of the Bayou Teche, by the depth of forty arpents, with such an opening as to give seven hundred and seventy four arpents and fifty superficial arpents, bounded above by lands formerly belonging to F. O. Darby now John Baldwin, and below by lands belonging to the estate of W. S. Harding deceased; also about 920 acres of swamp land and marsh lying in the rear of and adjacent to the said above described plantation."

The orphans' home assert that this title originated with R. H. Byrne. No sale to Byrne, vendor, can be found. None the less it is evident that Byrne was in possession as owner in 1867. At this date (the year 1867) he (Byrne) by registered deed sold to the orphans' home.

Subsequently to the deed just mentioned the original owner under the title of 1867— that is, the orphans' home—transferred four-fifths of the property to different owners by regular titles, who are owners to this day.

Each side has introduced a number of witnesses to prove the location of the land, boundary lines, and possession, to which we will have occasion to refer hereafter.

Issues arose during the course of the trial which may as well be decided at this time.

One of these is that the plaintiff in injunction, in view of the change of proceedings by the orphans' home et al. in having, in the first place, joined issue in the first suit, and afterward having brought a petitory action, became defendant in the petitory and in the injunction proceedings as well. We do not find it possible, in view of all the pleadings, to take that view of the legal situation.

It presents issues of importance. It bears, first, on that cardinal rule of evidence relating to the burden of proof; and, second, whether plaintiff in possession in his attack can invoke prescription.

No one disputes the correctness of the proposition that the onus of proof is with the plaintiff. The issue is, as presented by the defendant, that plaintiff, from the date that the corporations instituted their petitory action, is to be considered as defendant in the first suit by injunction, although he brought the suit and holds the affirmative in that suit.

The first suit had all the characteristics of a petitory action, and it is therefore not possessory. Plaintiff asked to be protected against all interference with him in his work of cutting down trees and making cross-ties on the land in accordance, as he alleges, with rights transferred to him by the heirs of Harding, asserted owners.

This demand would, if sustained, enable him to become the owner of the valuable part of the swamp. After a swamp is denuded of its trees, very little value remains.

In that suit the orphans' home joined issue with plaintiff therein, and denied the title under which he claims. It follows that plaintiff in that suit has not reversed his position from plaintiff to defendant by reason of the fact that the defendant corporations instituted a second suit which was consolidated with the first.

Plaintiff in the first suit must recover on the strength of his title. He has the onus of proof, and may be met by the plea of prescription. The suit of the orphans' home people contains no waiver which can enable plaintiff in injunction to change his position from plaintiff to defendant in order to shift the burden of proof; nor a waiver which has the effect of barring the orphans' home from the right of pleading prescription on the ground that a plaintiff cannot plead prescription to sustain his own demand, even if we admit that the position is correct as a general proposition, under all circumstances—a proposition upon which we do not find it necessary to dwell in this case, as we hold that plaintiff in the first suit remained plaintiff throughout the proceedings.

Let us suppose, for an illustration, that the owner of a tract of swamp land finds a person on his land, trespassing, and cutting down his trees, and that this trespasser, with a paper title, were to institute suit claiming the right to denude the land of its trees, claim as owner to that end, and that the defendant were to join issue, and produce his title, and prove a possession of 30 years thereunder, could he not sustain his plea of prescription?

After having determined that plaintiff remained plaintiff, we considered the issues presented.

Swamp lands have greatly increased in value of late years on account of the trees thereon. The result is that the titles to them have assumed an importance not thought of when these lands had little value.

The primordial title, dated in 1806, and another dated in 1832, of plaintiff in the first suit and defendant in the second, contains an imperfect description of the property. It is general, and refers to no particular property. Boundaries are not given, and the references are confusing. The first title makes mention of a plat annexed by Potier, surveyor, which, unfortunately for the parties, cannot be found. We presume that it sets forth the quantity and gives needful data to identify the land.

The second title—that of 1832—is equally as unsatisfactory as to description. It is a quitclaim deed, and, if it conveys anything, as we assume it was intended, we have no reason to infer that it includes the land immediately in the rear of the high land of the orphans' home. It was the intention in the act of 1832 to convey 400 arpents. We would not be justified in assuming that it was the land which was conveyed by the succession of Byrne to the orphans' home in 1867.

Plaintiff in injunction and defendant in the petitory action sought to eke out a title

by examining a number of witnesses to prove possession, and to trace ownership to these deeds by the fact of possession. Miss Harding, one of the defendants, part owner of the land, failed to prove that her possession was at all continuous and public. She relied upon the statements made to her by those who worked in these swamps; and, whilst their statements were enough to create the impression that chopping was done on the land beyond the projected line of the high land in front of which she was part owner, the testimony is not of that positive character needful to show possession and title in Miss Harding and others to the swamps in the rear of the plantation of the orphans' home people. The other owners, jointly with her, were more positive in some respects as witnesses, yet they only proved that sporadically a few trees were cut on the land bought by the Orphans' Home Society from Byrne's succession.

In our view, the owners from whom the orphans' home people bought in the year 1867 must have had possession. The improvements placed on the land prove it. The improvements consisted at one time of a sawmill, which has long since been done away with. The testimony shows it was constructed on the land claimed. Also a draining machine was erected thereon, and a shingle mill. Besides, roads were constructed, or passageways to the swamp, and a canal along the dividing line between the two tracts in question. In excavating this canal, earth was thrown on the neighbor's land; that is, the land now claimed by Dowdell et al. The earth thrown up formed a ridge as a protection against the flow of water from the neighbor's land. And, lastly, the right of workmen of the orphans' home to cut down trees was not disputed.

Since 1867, when the orphans' home became owner of the tract in contestation, at different times plaintiff in the petitory action (the orphans' home people) sold part of this land to different buyers and showed thereby that they exercised the right of owners over the whole tract. These acts were ex parte as relates to those with whom they are now in litigation. It none the less forms part of the many acts going to show that they were in possession as owners since 30 years.

Moreover, the title of 1867 by the Byrne succession was a title translative of property. The following bears thereon:

"Cependant si le possesseur actual produisait un titre translatif ne contenant aucune restriction quant à la possession, il faudrait décider conformément aux principes généraux que la possession juridique a été transmisse par l'effet du titre et depuis la date de ce titre." Lane on Le Huc, vol. 14, p. 442; 1 Cass, 31 Mars. 1884, D. 85, 1,210; 2 Cass, 3 Avr. 1883, S. 38, 1,340; Lerous de Bretagne, No. 290; Aubry et Rau, § 217.

With reference to the established rule invoked by plaintiff Dowdell that under some circumstances the owner's possession of a part of a tract of land may extend to its whole area, we do not for an instant deny. The owner under that rule can claim all lands not included in a superior adverse claim.

Another point urged by this plaintiff is that the orphans' home's title is insufficient by reason of the fact that it refers to, or rather seeks to transfer, a very much larger number of acres than the tract contains.

We can only say in answer that if, by projecting the lines, the acreage is very much less than the deed sets forth, it would not defeat the intention to sell the remainder. It was doubtless an oversight.

It must be borne in mind that the vendor, the Byrne succession, sold all the land to which claim is here made. The eastern boundary is given in full. The western and southern are indicated by laying down the points from which it is to project, and, besides, there is a ditch which follows the lower line a good part of the way.

This, we think, sufficiently includes the

whole tract sold to the orphans' home, to which defendants have no title. If any they ever had, it is barred by the long-term prescription.

This being our view, it follows that, in order to oust the plaintiffs in the petitory action from their possession and ownership, it devolved upon defendants in that action and plaintiffs in injunction to prove that they held title to the property, or that by long possession they acquired a prescriptive title. This they have not done.

We are therefore constrained under this view to affirm the judgment of the district court.

It is affirmed.

PROVOSTY, J., takes no part, not having heard the argument.