(80 South. 669)

No. 23320.

DICKINSON v. TEXANA OIL & REFINING CO. et al.

In re TEXANA OIL & REFINING CO. et al.

(Jan. 6, 1919. Rehearing Denied Feb. 3, 1919.)

*(Syllabus by Editorial Staff.)* ·

1. CERTIORARI ⬤➝17 — MANDAMUS ⬤➝38 — PROHIBITION ⬤➝5(3)—UNJUSTIFIED GRANT OF ORDER—RIGHT TO RELIEF.

   If grant of order of judicial sequestration of oil and gas properties was unjustified, company engaged in developing land, and aggrieved by order, is entitled to relief on its application for writs of mandamus, certiorari, and prohibition.

2. SEQUESTRATION ⬤➝12 — ALLEGATIONS OF PETITION—PREDICATION OF ORDER THEREON —STATUTE.

   Under Code Prac. art. 274, authorizing ex officio sequestration, judge trying cross-suits between individual and company involving oil and gas properties improperly predicated his action in granting judicial sequestration against company engaged in developing the properties solely on allegations of individual's petition, instead of upon all facts and circumstances, including all pleadings in two suits, and especially a contract of sublease from the individual to the company.

Application by the Texana Oil & Refining Company and others for writs of mandamus, certiorari, and prohibition against W. L. Dickinson, to prevent execution of an order of judicial sequestration. Order set aside, and judge directed as to his action on the matter of making or not making an order for sequestration.

Alexander & Wilkinson, of Shreveport, for plaintiff.

Wise, Randolph, Rendall & Freyer, of Shreveport, for defendants.

PROVOSTY, J. The matter presently to be considered is the application of the Texana Oil & Refining Company to this court for the writs of mandamus, certiorari and prohibition to prevent the trial judge from putting into execution an order of judicial sequestration granted by him.

Noel made an oil and mineral lease to Kronenburg of a quarter of a quarter section of land. Kronenburg transferred the lease to the Romax Oil Company. This company transferred a three-quarter interest to W. L. Dickinson. The original lease and the contracts by which it was thus transferred are not in the record, and nothing is known of them in this case except as may appear from the contract between the said Dickinson and the Texana Company. By this contract Dickinson sublets to the Texana Company the whole of said land, on the conditions that he shall complete at his expense a well already begun to be drilled by him on said land, and be paid by the Texana Company $1,000 at once, $2,000 in 10 days, $3,000 in

30 days, and in 60 days, provided the said well is then finished, $8,000; failing to make any one of which payments, the Texana Company is to forfeit, without notice or putting in default, all right to said sublease as well as all payments made thereunder; said company is to have "the management and operation of said lease," and is to drill nine more wells, if said first well proves to be an oil producer in paying quantities, these wells to be for the joint account of the parties and of the Romax Company; and the oil therefrom to belong one-half to the Texana Company and one-half to Dickinson for account of himself and the Romax Company, after payment of the royalty to the owner of the land, and after deduction of the cost of drilling the nine additional wells, and of the expenses of equipment and operation of the ten wells; and in case Dickinson fails to pay to the Romax Company $2,000 which under his contract with said company he is under obligation to pay, the Texana Company "is authorized to deduct said sum from any amount that may be due said Dickinson out of oil under the terms of the present contract." Other provisions in the contract need not be here referred to, as they have no bearing upon the present case.

The said first well had been producing for some time, and the oil was being sold by the Texana Company to the Standard Oil Company, when Dickinson filed the suit in which the order for judicial sequestration complained of has been made.

In said suit Dickinson alleges that because of failure to make the $8,000 payment the Texana Company has forfeited all right to the sublease; and he prays that the court so declare, and that said company be enjoined from cashing a certain check for $10,000, received by it from the Standard Oil Company for oil from said well, and in the event it has already cashed said check then that it be condemned to pay him said amount,

and that the Standard Oil Company be enjoined from making any further payment to said company. He further alleges that said check has already been cashed, and the amount deposited in the Commercial National Bank; and he asks that said bank be enjoined from paying out any moneys it may have on deposit for said company. This petition was duly sworn to, and the injunctions were issued as prayed.

Three days thereafter the Texana Company filed suit, alleging said contract with Dickinson; that by said contract it assumed the obligation of said Dickinson to develop said land for oil and gas; that it had accordingly completed one well, which had already produced $28,000 of oil, and would continue to produce at the rate of $800 a day; that for said purposes it was in possession of said land, and had been since the date of said contract, and was entitled under said contract to continue in possession; that said Dickinson had conveyed to one D. R. Beatty a part of his interest in said lease; and that he and said Beatty were interfering with its said possession of said land. On the point of the alleged failure to make the $8,000 payment, and the forfeiture of the sublease, the said company alleged as follows:

"That notwithstanding the final payment of $8,000 was not due under said contract, your petitioner on September 11th, paid to the said Dickinson through checks at the request of the said Dickinson, in favor of said Dickinson and Tarver upon an account by the said Dickinson, the sum of $1,692.99.

"That your petitioner then and thereupon offered to pay the said Dickinson the balance of said $8,000 notwithstanding said well had not been completed in accordance with said contract, and the said Dickinson refused said payment and declared that he had been fully paid all amounts due him, and that the balance of the last payment under said contract was due Belchic and Laskey, who were subcontractors under said Dickinson.

"That your petitioner was not aware that the said Belchic and Laskey were subcontractors on

said well, or that they had any connection therewith or any claims whatever against same or against your petitioner.

"That when your petitioner demanded of the said Dickinson and of the said Belchic and Laskey a statement or an account of said alleged claim, and offered, upon an ascertainment of the correctness of said claim and its approval by the said Dickinson, to pay said balance to said Belchic and Laskey.

"That notwithstanding said offer your petitioner, the said Dickinson and the said Belchic and Laskey have wholly failed and refused to render such statement to your petitioner."

The contract of sublease was annexed· to, and made part of, the petition; and the prayer was that said Dickinson and Beatty be enjoined from interfering with the petitioner's said possession of said land. . The petition was duly sworn to; the injunction was granted, and it was issued as prayed.

Twenty days thereafter the said Dickinson filed, in his own suit, a supplemental petition, in which he alleged, as follows:

"In the above-entitled case, now comes W. L. Dickinson, the plaintiff therein, and, adopting all allegations and prayer of his original petition with leave of the court, files this supplemental and amended petition.

"A. He shows that he was in the actual possession of said mineral lease, and had been in such possession for some time until the said defendant instituted its suit against him, being No. 24413, on the docket of this honorable court, wherein said defendant, under a false allegation that it was in possession of said property, obtained a writ of injunction against your petitioner from going on said premises.

"B. He further shows that he still maintained his possession of said premises and said mineral lease until the said Texana Oil & Refining Company induced his employés to turn possession thereof to it, and the said Texana Oil & Refining Company now has possession of said lease, though without any legal right thereto.

"C. He further shows that in addition to its failure to pay the balance of the contract for drilling the well on said premises as alleged in his original petition, under which it forfeited all of its rights to said mineral lease, the said Texana Oil & Refining Company has failed and neglected to commence the second well on said premises within 60 days from the completion of the first well, as provided in said contract, and

for that reason, if no other, it also forfeited its rights under said mineral lease.

"D. He shows that he is jointly interested in said lease in any event with the said Texana Oil & Refining Company, even if it has not forfeited its sublease as herein set forth, and that he is entitled to possession of said mineral lease, at least as much entitled to the possession thereof as the said Texana Oil & Refining Company, but that through said writ of injunction the said Texana Oil & Refining Company prevents him from exercising his right of possession of said premises, and that a judicial sequestration should issue and the court should appoint a judicial sequestrator to take charge of said property pending this suit, in order that the same might be turned over to the person entitled to it at the termination thereof.

"E. He further shows that said Texana Oil & Refining Company has but letter property in the state of Louisiana, and, so far as he is advised, owns a small lot, other property than its supposed interest in said mineral lease; and, if said company is permitted to remain in possession of said mineral lease and extract the oil therefrom, it will do so to the irreparable injury of your petitioner, for the reason that a judgment against it for the value of said oil would be wholly uncollectable.

"F. He further avers that he is the owner of said mineral lease and mineral rights in and under said property, and is entitled to the possession of the same, and has good grounds to apprehend that the defendant may make use of its possession to convert to its own use the oil produced therefrom."

He prayed for a judicial sequestration, and "that the court appoint a judicial sequestrator, directing and empowering him to take possession of said mineral lease and operate same pending this suit," etc.

This petition was duly sworn to. The court ordered the Texana Company to show cause why the sequestration should not be ordered. That company appeared, and first pleaded an exception of no cause of action, based on the contention that Dickinson could have adequate relief by injunction, and hence was not entitled to a sequestration; and, in the event this exception was overruled, it answered, denying the allegations of the petition for injunction, and averring that, in addition to the money which was tied up by

the injunction theretofore obtained by Dickinson, viz., $13,675 in the hands of the Standard Oil Company, and $6,000 on deposit in the Commercial National Bank, it had property in the state of the value of $440,445.45, whereas the interest of the said Dickinson in the said lease was only one forty-eighth. It annexed a schedule of said property. This answer was duly sworn to.

The learned trial judge heard no evidence. He held that the exception of no cause of action was not well taken, since the possibility of obtaining relief by injunction is no bar to the issuance of a judicial sequestration (Dowdell v. Allen, Judge, 105 La. 167, 29 South. 719; Sanders v. Ditch, 107 La. 333, 31 South. 777; Jennings-Heywood Oil Syndicate v. Debaillon, Judge, 113 La. 619, 37 South. 534); and he held, further, that he could not question the verity of the allegations made by Dickinson in his petition, but was bound to act upon them as made, and that, as made, they presented a proper case for judicial sequestration.

He accordingly issued the order, and the Texana Company, having been refused a suspensive appeal from it, filed in this court the present application for the writs of mandamus, certiorari, and prohibition.

[1] The business of developing this tract of land for oil and gas is one requiring special knowledge and experience, exercise of good judgment, and the handling of large capital. To take such a business out of the hands of the agents of the Texana Company and intrust it to some appointee of the court would naturally expose said company to loss; and this loss would be compensable by no one, since it would have resulted from the act of the court. If, therefore, the granting of said order was unjustified, the said company is entitled to relief.

[2] We think our learned brother erred in predicating his action solely upon the allegations of the petition of Dickinson, instead of upon all the facts and circumstances of the case, including all the pleadings in the two suits, and especially the contract of sublease, annexed to and made part of said pleadings.

To allow the allegations of one of the litigants to govern is to practically surrender to this litigant the discretion which the law has intrusted to the judge himself. In such cases the judge acts of his own motion; and the reason of his action is that all the facts and circumstances of the case, taken together, suggests the advisability of so doing. There is no need of his being asked. In fact, in the case of Allen, West & Bush v. Whetstone, 35 La. Ann. 846, counsel contended that the fact of a request having been made took away from the judge the power to make the order, because the order ought to issue on the judge's own motion. He is not bound to accept the allegations as true. Puckette v. Judge, 39 La. Ann. 902, 2 South. 801, 4 Am. St. Rep. 242; Crescent City v. Police Jury, 32 La. Ann. 1192.

The allegation, or ipse dixit, of Dickinson as to the Texana Company having failed to make payment and thereby forfeited all rights under the sublease is contradicted by the contrary allegation, or ipse dixit, of the agents of the said company. If these opposing allegations offset and nullify each other, then there remain the incontrovertible facts that the said company is entitled to possession under the sublease, and has been in possession from the date of the sublease.

Under the circumstances it could hardly be said that "one of the contending parties does not seem to have a more apparent right to the possession than the other;" and it is only when such is the case (C. P. art. 274) that the judge is empowered to order an ex officio sequestration.

We will add that, even if the rights of the parties appeared equal, a judge should think twice, nay three and more times, before or-

dering the ex officio sequestration of so precarious a property as an oil and gas lease, requiring special qualifications for successful management, and carrying obligations the nonperformance of which might entail forfeiture.

The order of sequestration in question is therefore set aside, and the Hon. T. F. Bell, judge, is directed, in acting upon the matter of making or not an order for official sequestration herein, to take into consideration all the pleadings in both suits and all the facts and circumstances of the case; W. L. Dickinson to pay the costs of the present application to this court.

DAWKINS, J., takes no part.